STATE OF VERMONT

SUPERIOR COURT

ENVIRONMENTAL DIVISION
Docket No. 130-11-18 Vtec
Docket No. 44-3-19 Vtec

| Hettinger Telecommunications Facility |
| Hettinger Act 250 Permit |

## ENTRY REGARDING MOTION

Count 1, Municipal DRB Other (130-11-18 Vtec)
Count 2, Municipal DRB Other (130-11-18 Vtec)
Count 3, Municipal DRB Other (130-11-18 Vtec)

Title:          Motion in Limine to Exclude Evidence (Motion 5)
Filer:          Black Diamond Consultants, Inc.
Attorney:    William J. Dodge
Filed Date:   August 23, 2019

Response filed on 08/28/2019 by Attorney Laura L. Wilson for Appellant John Luongo
         Opposition
Response filed on 09/09/2019 by Attorney Alexis L. Peters for party 8 Co-counsel
         Reply

**The motion is GRANTED.**

Before the Court are two coordinated dockets relating to applications submitted by Rising Tide Towers, LLC and Black Diamond Consultants, Inc. (together, Applicants) for municipal and Act 250 approval of a 190-foot cell tower (the Project) on property located at Church Hill Road in Norton, Vermont. The Project received an Act 250 land use permit from the District 7 Environmental Commission (Commission) and a conditional use approval from the Town of Norton Development Review Board (DRB). Appellant John Luongo appeals both decisions, and this matter is scheduled for trial beginning on Tuesday, September 24, 2019.

By their present motion, Applicants seek to preclude Mr. Luongo from introducing testimony or other evidence at trial regarding alternative sites for the Project. From the parties' filings, it appears that Mr. Luongo may intend to offer testimony concerning alternate locations that are not currently known to or controlled by Applicants. The central question is whether evidence of such alternative sites is relevant to an evaluation of impacts under criterion 8 of Act 250 or under the Town of Norton's conditional use zoning regulations. We begin with Act 250.

Criterion 8 provides that a project must "not have an undue adverse effect" on its surroundings, including "the scenic or natural beauty of the area" and "aesthetics." 10 V.S.A. § 6086(a)(8). In determining whether a project will have an undue adverse effect, we apply the two-step "Quechee test." In re Goddard Coll. Conditional Use, 2014 VT 124, ¶ 6, 198 Vt. 85 (reciting the test first applied in Re: Quechee Lakes Corp., Nos. 3W0411-EB and 3W0439-EB, Findings of Fact, Conclusions of Law, and Order (Vt. Envtl. Bd. Nov. 4, 1985)). Step one asks "whether the project will have an adverse impact." Goddard, 2014 VT 124, ¶ 6 (quotations omitted). If yes, we proceed to step two and determine "whether the adverse impact will be undue." Id. ¶ 6 (quotations omitted). "An adverse impact is undue if (1) the project violates a clear, written community standard . . . , (2) the project offends the sensibilities of the average person, or (3) the applicant has failed to take generally available mitigating steps that a reasonable person would take to improve the harmony of the proposed project with its surroundings." Id. (quotations omitted).

The issue here involves the third factor under the Quechee undue-impact analysis: whether the applicant took "generally available mitigating steps." See id. (quotations omitted). Mr. Luongo asserts that evidence of alternative sites for the Project can and should be considered as part of a mitigation analysis. In this factual context, we disagree.

"A generally available mitigating step 'is one that is reasonably feasible and does not frustrate the project's purpose or Act 250's goals.'" Id. ¶ 8 (quoting In re Stokes Commc'ns Corp., 164 Vt. 30, 39 (1995)). In cases like this, reasonably feasible steps might include shifting the position or location of a tower on a given parcel to reduce its aesthetic impact. But it is another matter to consider wholesale relocation to a distant part of a large property or, as suggested in this case, to entirely different properties. Moving a project such that it creates a new set of impacts on a different set of stakeholders is more akin to creating a new project than undertaking reasonably feasible mitigation.

Our analysis is guided by the decision in Verizon Wireless Barton Act 250 Permit, where we observed that the very language concerning mitigation, "to improve the harmony of the proposed project with its surroundings," most naturally refers to "steps that could be taken at the site proposed for the project, not some alternate site." In re Verizon Wireless Barton Act 250 Permit, No. 6-1-09 Vtec, Entry Regarding Motion to Exclude Evidence, at 1–2 (Vt. Super. Ct. Envtl. Div. Oct. 15, 2010) (Durkin, J.) (quotations omitted). Verizon Wireless addressed a similar motion and similar facts to those before us here: the Appellant sought to introduce "evidence that would suggest [] Applicant has failed to take 'generally available mitigating steps,' since there are alternate sites for Applicant's proposed [cell] tower." Verizon Wireless, Entry Regarding Motion to Exclude Evidence, at 2. There, as here, the only Act 250 issue concerned criterion 8. Id.

Further support for our conclusion lies in "well established precedent" holding that this Court lacks "authority to investigate alternative sites in respect to matters of aesthetics" under Act 250. Id.; Re: Vermont Electric Power Company, Inc., Land Use Permit Application, No. 7C0565-EB, Findings of Fact, Conclusions of Law, and Order, at 4–5 (Vt. Envtl. Bd. Dec. 12, 1984). We understand this to mean, at a minimum, that "we are not authorized to look beyond

alternative sites that the applicant owns or controls."[1] In re Verizon Wireless Barton Act 250 Permit, No. 6-1-09 Vtec, Entry Regarding Motion for Reconsideration, at 2 (Vt. Super. Ct. Envtl. Div. Oct. 29, 2010) (Durkin, J.). This comports with guidance from the Supreme Court which indicates that the Quechee Test does not require applicants to "show that the proposed site . . . is the best site in the town" – particularly where the applicant does not own or control the suggested alternative sites. See In re Rutland Renewable Energy, LLC, 2016 VT 50, ¶ 27–28, 202 Vt. 59.

Mr. Luongo contends that the Supreme Court's decision in Goddard College does not support the exclusion of evidence relating to alternative sites, yet nothing in that opinion undermines our analysis here. In Goddard, the Supreme Court examined and ultimately left open the question "whether alternative siting *within a project tract* may be considered as a reasonable mitigating measure." Goddard, 2014 VT 124, ¶ 11 (emphasis added). The Court addressed a factually distinct scenario where the project opponent sought to introduce evidence "on relocation of the project elsewhere on campus," that is, elsewhere on the same property. Id. ¶ 9. The issue here concerns alternative "off-site" locations that are not within Applicants' control. Goddard did not decide whether evidence of on or off-site alternatives must be considered, and it has no bearing here. See id.

A final note with respect to criterion 8: Applicants correctly point out that Mr. Luongo's Statement of Questions did not challenge the Commission's evaluation of mitigation steps under the Quechee test. Question 4 of the parties' stipulated Statement of Questions references only factors (1) and (2) of the Quechee undue-impact analysis, namely whether "(1) the project violates a clear, written community standard . . . , [or] (2) the project offends the sensibilities of the average person." See Goddard, 2014 VT 124, ¶ 6 (quotations omitted). This Court is generally "confined to the issues raised in the [S]tatement of [Q]uestions" or matters intrinsic to the Statement of Questions. See In re Jolley Assocs., 2006 VT 132, ¶ 9, 181 Vt. 190 (quotations omitted). Thus, even if we were to agree with Mr. Luongo's argument in opposition to this motion, evidence regarding mitigation falls outside the scope of this Act 250 appeal.

In the context of his municipal appeal, Mr. Luongo argues that this Court should consider evidence of alternative sites in our review of the conditional use approval issued by the DRB. We find no authority for that proposition. The parties' stipulated Statement of Questions references the Town of Norton Zoning Bylaw (Bylaw) Section 607(2)(B), which requires the DRB to "determine if a proposed conditional use has the potential to have an undue adverse effect on . . . [t]he character of the area affected" as defined by the relevant zoning district and the guidance in the town plan.

When we evaluate "undue adverse effect[s]" under conditional use bylaws, we apply the Quechee test outlined above to assess impacts on the specific criteria in the bylaws. See In re Grp. Five Investments CU Permit, 2014 VT 14, ¶ 14, 195 Vt. 625, overruled on other grounds by In re Confluence Behavioral Health, LLC, 2017 VT 112, ¶ 14, 206 Vt. 302. The specific criteria in this case concerns impacts to "the character of the area" and here, as in the Act 250 context,

---

[1] Mr. Luongo cites In re Rinkers, Inc. to suggest that evidence of alternative sites is relevant and should be part of a mitigation analysis. See In re Rinkers, Inc., No. 301-12-08 Vtec (Vt. Envtl. Ct. May 17, 2010) (Wright, J.). On these facts, and read together with other precedent, we do not believe the case supports that proposition.

the Quechee test asks whether the applicant took "generally available mitigating steps" to improve the project's harmony with its surroundings. Bylaw § 607(2)(B); Grp. Five Investments, 2014 VT 14, ¶ 11 n.2.

We find no precedent suggesting that relocation is a reasonable step to mitigate impacts on "the character of the area." Cf. Zaremba Grp. CU - Jericho, No. 101-7-13 Vtec, slip-op. at 14 (Vt. Super. Ct. Envtl. Div. Nov. 7, 2014) (Walsh, J.) (holding that a change requiring the redesign of a project is not a mitigating step "that a reasonable person would take").  Nor do the Bylaw sections before us provide authority to consider alternative sites as mitigating measures. Section 607(3) lists permissible permit conditions, including changes to lot size, building height, access points, and landscaping "to protect the best interests of the surrounding property." But the conditions speak to *on-site* mitigation, not evaluation of alternative sites.  We therefore conclude that evidence of alternative sites is not relevant to Mr. Luongo's municipal appeal.

So ordered.

Electronically signed on September 17, 2019 at 10:54 AM pursuant to V.R.E.F. 7(d).

_____
Thomas G. Walsh, Judge
Superior Court, Environmental Division

Notifications:
Laura L. Wilson (ERN 4042), Attorney for Appellant John Luongo
For Informational Purposes Only Gina Vigneault
Interested Person Town of Norton
William J. Dodge (ERN 4634), Attorney for Appellee Black Diamond Consultants, Inc.
Alexis L. Peters (ERN 10111), Attorney for party 6 Co-counsel
William J. Dodge (ERN 4634), Attorney for Interested Person Rising Tide Towers, LLC
Alexis L. Peters (ERN 10111), Attorney for party 8 Co-counsel
Evan P. Meenan (ERN 1632), Attorney for For Informational Purposes Only Natural Resources Board