VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.     23-AP-078



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant.  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

# ENTRY ORDER

AUGUST TERM,   2023

Amanda Houle v. Jason Houle\*

}
}
}
}
}

APPEALED FROM:

Superior Court, Windham Unit,
Family Division
CASE NO. 20-DM-00021
Trial Judge: Katherine A. Hayes

In the above-entitled cause, the Clerk will enter:

Husband appeals from the trial court's decision on his motion to modify his spousal-maintenance obligation.  We affirm.

The court issued a final divorce decree in July 2021, ordering husband to pay wife $1800 per month until July 2027 for spousal maintenance.  Subsequently, the parties engaged in motion practice and participated in multiple hearings related to husband's failure to pay spousal maintenance, ultimately resulting in a judgment order for overdue maintenance and a contempt order against husband for disobeying court orders to provide financial documentation.  In March 2022, husband filed this motion to modify spousal support.  He argued that due to health problems and a decrease in his capacity to earn money, as well as improved financial circumstances for wife, he should not be required to pay any maintenance.

Following an August 2022 contested hearing, the court issued a written decision in January 2023 granting husband's motion in part.  It first recounted the following background taken from its July 2021 divorce order.  Husband was working for a Massachusetts construction company, earning approximately $7750 per month.  He also worked "side jobs" with the primary goal of covering the annual property taxes for the marital residence, which were about $5000; however, he typically earned significantly more than that amount from supplemental work each year.  Wife was employed full-time as a paraprofessional at an elementary school, earning $1660.25 per month during the 2020-2021 school year.  She also worked part-time for her mother, assisting in caring for her severely disabled sister.  She earned about $959 per month from that employment during the COVID-19 pandemic, which was a significant increase from before the pandemic because nonfamily-based caregivers were not able to continue providing in-home care.  Wife's pre-pandemic wages totaled approximately $2,297 per month.

At the time of the divorce, the court found that husband's reasonable monthly expenses were approximately $5000.  It found, based on analysis of the relevant factors, that wife's reasonable needs were $5445 per month.  With the expectation that wife would be awarded

approximately $1000 per month in child support, the court concluded that she should be awarded $1800 for spousal maintenance for six years, which would provide her sufficient time to maximize her employment-based income.

Based on evidence presented at the hearing on husband's motion to modify spousal maintenance, the court made the following factual findings and legal conclusions. Husband recently quit his job with the Massachusetts construction company and went to work for a local construction business as a foreman. He does not have to travel as much but makes less money— approximately $5,389 per month. Husband left his former position because he was stressed out and overwhelmed by the court's divorce decision, and he had relapsed into drug abuse. His job in Massachusetts exacerbated his addiction because co-workers were selling him drugs. As part of the transition to working in Vermont, husband began meeting regularly with a therapist and his doctor.

In addition, in April 2022, defendant had a concerning health-related incident, where he became dizzy and numb and had difficulty speaking while at work. He went to a hospital and doctors recommended he stay for further treatment, but he declined because he did not want to miss scheduled parent-child contact time. Afterward, he met with his primary care physician multiple times and there has been no recurrence of these symptoms. Due to this health scare, husband decided to stop doing outside contracting work and focus on his primary job as his sole source of income. The court found that husband's current monthly expenses, apart from child support and spousal maintenance, total approximately $5900.

The court also found that several relevant aspects of wife's life had changed since the divorce. At the time of the hearing on the motion to modify, wife was under contract to sell the marital residence—which had been awarded to her in the divorce—and was expecting to close by September 2022 with net proceeds of approximately $100,000. She planned to put these funds into building a new home. She had been dating a new boyfriend for about one year. He was employed as a restaurant manager. A few months before the hearing, she moved into his home in New Hampshire with the children and enrolled the children in school there.

Wife had not been working during summer months. She was planning to apply for a job as a paraprofessional in the children's new school district. She also was considering opening an in-home childcare program after she and her boyfriend completed building their new home together. The court found that wife's monthly expenses for household costs, vehicle costs, and personal expenses were over $4000, and that she spent an additional $853 per month on expenses for the children.

The court noted that husband had not paid any spousal maintenance at all since the divorce decree. There was also no evidence that husband had paid anything toward satisfying the judgment order that the court had issued following the divorce decree based on his failure to pay spousal support.

Based on husband's reduction in income and wife's new living situation as well as her sale of the marital residence, the court concluded that there was a real, substantial, and unanticipated change of circumstances warranting reexamining the spousal-maintenance award. The court considered the factors relevant to spousal maintenance in 15 V.S.A. § 752(b) that had changed since the July 2021 divorce decree.

It concluded that wife's financial resources remained insufficient to meet her needs without at least some support from husband, even when accounting for the child support that

husband had paid. The court also concluded that there had been no significant change in the time and expense necessary for wife to increase her income to meet the standard of living established during the marriage. However, the court determined that husband's health had declined and that he had made a rational decision to work only one full-time job and not to supplement this income with outside jobs. It concluded that this income reduction diminished his ability to pay spousal maintenance. It determined that some reduction in the monthly amount of support was warranted, but that the six-year term of maintenance should not be shortened.

To recalculate the proper amount of maintenance in light of these changed circumstances, the court looked to the guidelines set in 15 V.S.A. § 752(b)(9). It assumed that wife's income would be approximately the same in her expected new paraprofessional position—approximately $1922 per month. Thus, it determined that the difference in the parties' income would be approximately $3400. Based on that differential, the guidelines called for wife to be awarded between $550 and $1144 per month in spousal maintenance. The court determined that a reduction from $1800 per month to $900 per month was appropriate. Thus, the court granted husband's motion to modify spousal maintenance only in part.

On appeal, husband raises numerous challenges to this decision. He contends that the trial court did not properly analyze the statutory factors and made various errors in evaluating and weighing the evidence, including improperly calculating the parties' respective incomes and resources.

The trial court may not modify an existing spousal-maintenance award unless it finds that there has been a "real, substantial, and unanticipated change of circumstances." 15 V.S.A. § 758. "The burden for showing a change in circumstances is a heavy one, and lies with the party seeking the modification." Wardwell v. Clapp, 168 Vt. 592, 594 (1998) (mem.). "A court has broad discretion in determining the amount and duration of a maintenance award, and we will set it aside only when there is no reasonable basis to support it." Mayville v. Mayville, 2010 VT 94, ¶ 8, 189 Vt. 1 (quotation omitted). Thus, "[w]e review a trial court's decision whether to modify spousal maintenance deferentially, and will not disturb its ruling unless the discretion was erroneously exercised, or was exercised upon unfounded considerations or to an extent clearly unreasonable in light of the evidence." Zink v. Zink, 2016 VT 46, ¶ 9, 202 Vt. 10 (quotation omitted).

Husband challenges several aspects of the original July 2021 divorce decree, including the court's determinations regarding wife's ability to maintain a summer job, its valuation and division of certain assets, its calculation of wife's income, and the overall fairness of the decree. These arguments are effectively a collateral attack on that final judgment, which is no longer subject to appeal, so we will not consider them. See Youngbluth v. Youngbluth, 2010 VT 40, ¶ 7, 188 Vt. 53 (explaining that divorce decree is final judgment and motions to modify divorce decree cannot be used to collaterally attack decree even when final judgment may be erroneous). Indeed, husband concedes that he should have raised these arguments on direct appeal from the divorce decree but failed to file a timely appeal. The only decision properly before this Court is the trial court's order resolving husband's motion to modify spousal maintenance.

Husband argues that the court's findings regarding wife's reasonable expenses and available resources were erroneous for several reasons. He asserts that the court therefore erred in considering her "ability to meet . . . her needs independently" under 15 V.S.A. § 752(b)(1) and improperly concluded that she lacks "sufficient income [or] property . . . to provide for . . . her reasonable needs" under 15 V.S.A. § 752(a)(1). "[W]e will uphold the family court's findings of

3

fact unless, taking the evidence in the light most favorable to the prevailing party and excluding the effect of modifying evidence, there is no credible evidence in the record to support them." Kasser v. Kasser, 2006 VT 2, ¶ 16, 179 Vt. 259.

First, husband cites to evidence outside of the trial court record—for example, the price for which wife sold the marital residence after the hearing on the motion to modify, and that wife gave birth to a baby by her new boyfriend shortly after the hearing on the motion to modify but did not disclose her pregnancy to the court. We will not consider such evidence because our review is limited to the record established below. See Hoover v. Hoover, 171 Vt. 256, 258 (2000) ("[O]ur review is confined to the record and evidence adduced at trial. On appeal, we cannot consider facts not in the record.").

Second, husband contests the weight that the trial court assigned to certain evidence or determinations of credibility. For instance, he argues that wife underreported her income and undervalued her likely proceeds from the sale of the marital home in her testimony and financial affidavit. He contends that wife's car payments should not have been included in her expenses because the car was registered in her boyfriend's name and she testified falsely about making those payments. He also argues that although wife testified she would be paying her boyfriend $600 per month for half of his mortgage once the marital residence sold, the court should not have credited this testimony or included this amount in her reasonable expenses because the mortgage was not in her name and this was a speculative future expense.

We are unable to review any claims regarding testimony presented at the hearing on the motion to modify because husband failed to order a transcript of that hearing. See V.R.A.P. 10(b)(1) ("By failing to order a transcript, the appellant waives the right to raise any issue for which a transcript is necessary for informed appellate review."); Evans v. Cote, 2014 VT 104, ¶ 7, 197 Vt. 523 ("Without the transcript, this Court assumes that the trial court's findings are supported by the evidence."). Moreover, as the trier of fact, it was exclusively within the trial court's purview to determine the credibility of evidence and how much weight to give to it. Cabot v. Cabot, 166 Vt. 485, 497 (1997). Thus, we will not reweigh evidence or assess credibility de novo, and we uphold the trial court's findings insofar as they are based on wife's testimony and affidavits regarding income and expenses.

Third, husband asserts that the court's maintenance order effectively forces him to subsidize wife's boyfriend because her claimed expenses benefit the boyfriend. As a threshold matter, it is not clear that husband preserved this argument for appeal by raising it to the trial court. Bull v. Pinkham Eng'g Assocs., 170 Vt. 450, 459 (2000) ("Contentions not raised or fairly presented to the trial court are not preserved for appeal."). Regardless, the record does not support the premise of this contention. The court found that "[wife] had a new vehicle, a 2016 Hyundai Tucson, registered in her boyfriend's name, but she was paying the car payments." Nothing about this finding suggests, and husband cites no evidence to support, that wife was paying for a car primarily used by her boyfriend. Similarly, wife paying half of her boyfriend's mortgage on the home that they live in together does not amount to a subsidy for wife's boyfriend.

In any event, husband merely contends, based on out-of-state case law, that wife's "cohabitation [with her new boyfriend] requires the reduction of spousal maintenance." Assuming for the sake of argument that this principle is consistent with Vermont law under the facts of this case, the court here followed it by cutting husband's maintenance obligation in half.

4

Husband has presented no basis to overturn the trial court's factual findings regarding wife's expenses, income, or available resources.

Apart from challenging factual findings, husband raises several additional arguments. He suggests that the court made erroneous evidentiary rulings, precluding him from effectively cross-examining wife regarding her testimony that she anticipated receiving approximately $100,000 in net proceeds from the sale of the martial residence. Because husband failed to order a transcript of the hearing, we cannot evaluate this argument. Evans, 2014 VT 104, ¶ 7.

Husband also argues that the court misapplied factors (b)(5) and (b)(6) under 15 V.S.A. § 752. He contends that the court failed to consider "the age and physical and emotional condition of each spouse," 15 V.S.A. § 752(b)(5), because he is older and in poorer health than wife. However, the court explicitly considered and discussed these issues in making its decision. Indeed, it acknowledged that husband's "health has in fact suffered, and he has made a rational, and possibly life-saving or life prolonging decision to work only one full-time job, and not to supplement that income with additional outside jobs in order to increase his income." This was a major factor in the court's decision to reduce husband's maintenance obligation. We see no abuse of discretion in the court's consideration of this factor.

Similarly, husband claims that the court erred in applying § 752(b)(6) because he has not been able to meet his reasonable needs since the divorce decree was issued based on his newly reduced income and the $1800-per-month maintenance obligation. Despite the fact that husband had not paid any spousal maintenance between the date of the divorce decree and the hearing on the motion to modify, the court largely agreed with husband's assessment that the obligation was now too high relative to his income. He claims, however, that according to his calculations, even a reduction of his spousal-maintenance obligation to $900 per month will leave wife with an overall income greater than his. It appears that this contention is based on his assertions that the court improperly valued certain assets in the original divorce decree and thus awarded wife significantly more than him. As explained above, we will not entertain challenges to the underlying divorce decree in this appeal. That husband disagrees with the conclusion the court reached upon considering these factors is not a basis for reversal.

Finally, husband contends that the trial court misinterpreted case law and erroneously calculated the length of the parties' marriage for purposes of the statutory guidelines for spousal support. See 15 V.S.A. § 752(b)(4) (requiring court to consider "the duration of the civil marriage"). Husband waived this argument. He challenges the court's analysis of case law in the original divorce decree, but he cannot now collaterally attack that judgment. Youngbluth, 2010 VT 40, ¶ 7. Husband argues that he should nevertheless be allowed to contest this point because the court applied the same analysis here by implication, given that it relied on the same length of marriage even though it did not revisit its analysis from the original divorce decree. Accepting this proposition would allow husband to do an end-run around the rules regarding preservation and finality of judgments. See In re Entergy Nuclear Vt. Yankee, 2007 VT 103, ¶ 9, 182 Vt. 340 (explaining that "the purpose of the [preservation] rule is to ensure that the original forum is given an opportunity to rule on an issue prior to our review" and that "allowing a party to wait to raise the error until after the negative verdict encourages that party to sit silent in the face of claimed error, a policy we have admonished" (quotations omitted)). Not only did he fail to timely appeal the original divorce decree, he also did not raise this argument in his motion to modify. We will not consider this argument for the first time on appeal.

We have considered all of the arguments reasonably discernible from husband's brief and conclude that they are all without merit.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
William D. Cohen, Associate Justice

_____
Nancy J. Waples, Associate Justice